*304 CORRECTED OPINION
JOANOS, Judge.
The claimant in this workers’ compensation case appeals an order of the judge of compensation claims (JCC), denying and dismissing with prejudice the claim for workers’ compensation benefits. The dismissal with prejudice was predicated on the JCC’s finding that claimant failed to file the claim within two years of the date of accident.
On June 19,1992, claimant filed a claim for compensability of his left knee injury, seeking compensation benefits from June 1,1992, and continuing, and medical treatment for repetitive injury to claimant’s left knee occurring during more than ten years of employment with the employer. Claimant’s job duties as a sales representative involved driving many miles each year. From 1981 until 1988, claimant drove automobiles equipped with a manual transmission. In 1988, he purchased an automobile equipped with an automatic transmission.
The record reflects that claimant’s introduction to knee problems came relatively early in his life. In 1967, the then fifteen-year-old claimant underwent right knee surgery for a high school football injury. In 1983, Dr. Miller, a Minneapolis orthopedic surgeon, performed arthroscopy with de-bridement to claimant’s left knee. In 1988, Dr. Miller performed surgery on both of claimant’s knees. Claimant remained under Dr. Miller’s care until 1989, for what appears to have been ongoing or repeat knee problems. In 1989, claimant moved to Florida. In 1991, Dr. Oliver, a specialist in orthopedic surgery and sports medicine, began treating claimant’s knee problems. Dr. Oliver performed surgery on claimant’s right knee in 1991.
Claimant sought workers’ compensation benefits only with respect to his left knee. In April 1992, he wrote to Dr. Miller in Minneapolis, requesting a medical opinion concerning his left knee condition.[1] Dr. Miller, who had treated claimant for knee problems over a ten-year period, attributed his left knee problem to years of driving involving the repetitive use of a clutch. He opined that claimant’s right knee symptoms were “simply an extension of his past right knee pathology,” which originated with the high school football injury.
On December 5, 1992, claimant underwent an independent medical examination performed by Dr. Callahan, an orthopedic surgeon. In Dr. Callahan’s view, the action of driving with a clutch would make claimant’s left knee symptomatic and hasten the changes, but it would not cause them. Dr. Callahan opined that the “deleterious part of that activity was the prolonged sitting. That increases patellar femoral contact forces.”
The JCC viewed claimant’s letter to Dr. Miller as an indication that claimant possessed knowledge in 1988 as to the cause of his left knee condition, and had the obligation to report the injury at that time. The JCC reasoned that claimant made the connection between his use of a manual transmission and the increased erosion in his left knee cap in 1988, when he underwent a surgical procedure on his left knee, then switched back to an automatic transmission. Reasoning from this sequence of events, the JCC determined that 1988 was the effective accident date, making the claim filed in 1992 time barred, and denied and dismissed the claim with prejudice. The order on appeal made no mention of Dr. Callahan’s opinion.
To recover under a repetitive trauma theory, a claimant must show (1) prolonged exposure, (2) the cumulative effect of which is injury or aggravation of a pre-exist-ing condition, and (3) that he has been subjected to a hazard greater than that to which the general public is exposed. Alternatively, the claimant must demonstrate a series of occurrences, the cumulative effect of which is injury. Alvarez v. City of Tampa, 647 So.2d 301, 303 (Fla. 1st DCA 1994); Johnson v. Knight, 594 So.2d 836, 837 (Fla. 1st DCA 1992), quoting Festa v. Teleflex, Inc., 382 So.2d 122, 124 (Fla. 1st DCA), review denied, 388 So.2d 1119 (Fla.1980). The multiple ex *305 posures constitute “repeated accidents” which combine to produce the compensable injury. Worden v. Pratt Whitney Aircraft, 256 So.2d 209, 210 (Fla.1971); Tokyo House, Inc. v. Hsin Chu, 597 So.2d 348, 351 (Fla. 1st DCA 1992).
In this ease, the JCC determined that the limitations period began in 1988, because that was when claimant began operating an automobile equipped with automatic transmission and when he was under the belief that the manual gear shift was causing the condition. In making this finding, it appears the JCC overlooked or ignored the testimony of Dr. Callahan, an orthopedic surgeon who performed an independent medical examination of claimant at the behest of the employer/carrier. In Dr. Callahan’s opinion, claimant’s many years of driving with a clutch may have made his left knee symptomatic, but it did not cause the condition of his left knee. Rather, Dr. Callahan opined that the prolonged sitting in an automobile was the part of the activity which caused the damage.
The record reflects that from 1983 until 1988, while driving an automobile equipped with manual transmission, claimant drove less than 35,000 miles per year. In contrast, from 1989 until 1991, claimant drove in excess of 35,000 miles per year in an automobile equipped with automatic transmission. For example, in 1989, claimant drove a total of 35,928 miles; in 1990, he drove 39,617 miles; and in 1991, the year he terminated his employment, claimant drove 47,847 miles. Despite his use of automatic transmission during this time, the condition of claimant’s left knee was exacerbated further. This erosion or exacerbation is corroborative of Dr. Callahan’s opinion that the many hours of driving, not the manual transmission, was the primary cause of claimant’s knee condition.
If Dr. Callahan’s opinion is accepted that it was the prolonged sitting that resulted in the injury, it would appear the two-year statute of limitations did not begin to run until the employment was terminated in 1991, as the continued trauma of the prolonged sitting continued until then. We have found no evidence indicating that claimant was aware any earlier that it was in reality the prolonged sitting that was causing the injury. Consequently, a claim filed in 1992 presumably would be well within the period allowed.
Since there is nothing in the order to indicate the JCC considered Dr. Callahan’s testimony that claimant’s left knee condition resulted from his prolonged sitting in an automobile, and since the reasons for a possible unstated rejection of Dr. Callahan’s testimony are not apparent from the record, we must reverse the order. Patton v. Metal Industries, 636 So.2d 891, 892-893 (Fla. 1st DCA 1994).
Accordingly, the appealed order is reversed and remanded for further proceedings, taking into account the medical testimony of Dr. Callahan.
ERVIN and BARFIELD, JJ., concur.

. In his letter, claimant reminded Dr. Miller that claimant had been unable to think of any reason for his left knee erosion, other than that he had driven an automobile equipped with manual transmission approximately 40,000 miles per year from 1981 until 1988.